# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 21-1729

```
* * * * * * * * * * * * *
JILL SHANTI ZINZI                    *
                                     *
                                     *
        Petitioner,                  *         Filed: June 4, 2026
                                     *
v.                                   *         Chief Special Master Corcoran
                                     *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
        Respondent.                  *
* * * * * * * * * * * * *
```

*Courtney C. Jorgenson,* Siri & Glimstad, LLP, Phoenix, AZ, for Petitioner.

*Kimberly S. Davey,* U.S. Department of Justice, Washington, D.C., for Respondent.

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On August 19, 2021, Jill Shanti Zinzi filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Program").[2] Petition, dated Aug. 19, 2021. (ECF No. 1) ("Pet."). Petitioner alleged that she suffered from postural orthostatic tachycardia syndrome ("POTS") and other symptoms of autonomic dysfunction as a result of receiving the tetanus, diphtheria, and an acellular pertussis ("Tdap") vaccine on February 5, 2019. Pet. at Preamble. On June 13, 2025, Petitioner filed a motion to dismiss her claim, and a Decision ending the case was entered on June 16, 2025. Decision (ECF No. 52).

Petitioner was first represented by Andrew Downing from the initiation of this claim through January 2025, when new counsel appeared (followed shortly thereafter by a second

---

[1] This Decision will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "The Program" or "Program"]. Individual section references hereafter will be to Section 300aa of the Act.

counsel change, albeit within the same law firm). Clerk's Notice to Substitute Counsel, dated Jan. 13, 2025. At that time, Petitioner requested an interim award of fees and costs (totaling $47,011.12) for withdrawing counsel. Motion for Interim Attorney's Fees ("Int. Fee App.") (ECF No. 41) at 16.

Respondent objected to Petitioner's fees request on February 13, 2025, arguing that reasonable basis was lacking. Respondent's Response ("Response") at 1. (ECF No. 45). Respondent argues that "[t]he objective evidence indicates that [P]etitioner neither began her case with a reasonable basis, nor did one emerge as her case progressed." Response at 19. Respondent maintained that Petitioner never was able to establish the diagnosis of POTS, although conceding that at one point she was "tentatively diagnosed" with it. *Id.* at 20. Respondent also asserted that Petitioner's symptoms and complaints were inconsistent with POTS, as discussed by many providers in her medical records *prior* to filing her claim. *Id.* at 20-21. And the proposed causation theory was weak, and/or one that had been repeatedly rejected. *Id.* at 21, 23; *see also* Pet. Ex. 19 at 3,19.

Petitioner filed a reply on February 18, 2025. Pet. Int. Reply (ECF No. 47). Petitioner insisted that her claim had both good faith and reasonable basis. Reply at 1. Petitioner argues that she provided extensive medical records, received a covered vaccine, and filed medical literature that discuss POTS as an autoimmune condition. *Id.* at 11.

On December 16, 2025, Petitioner filed a final motion for fees and costs ("Final Fees App.") (ECF No. 57). Petitioner is requesting that present counsel and other staff at Siri & Glimstad be reimbursed for a total of $11,597.50[3] ($11,527.50 in attorneys' fees and $70.30 in attorneys' costs) – in addition to sums previously requested. *Id.* at 11. On December 29, 2025, Respondent filed a response, again opposing fees and costs in this matter. Response to Final Motion (ECF No. 59). Petitioner filed a reply on December 30, 2025, again reasserting her position that this claim had reasonable basis and requested that both the interim attorneys' fees and final fees motion be granted. Pet. Reply at 2-3. Pet. Reply (ECF No. 60). The following day, Petitioner filed a supplemental motion for final attorneys' fees and costs, requesting an additional $759.00 in fees, as a result of having to file a reply to respondent's motion. Supplemental ("Supp.") Mot., filed Dec. 31, 2025. (ECF No. 61).

For the reasons set forth below, I hereby **GRANT** in part Petitioner's two pending motions, awarding final fees and costs in the amount of $43,623.06.

---

[3] This amount incorporates Petitioner's supplemental final fees motion. *See* Supp. Mot. at 1.

**ANALYSIS**

### I.    Applicable Legal Standard

Motivated by the desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that fees and costs in Vaccine Act matters may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344; *see also Sebelius v. Cloer*, 133 S.Ct.1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that fees be reimbursed for every losing petition. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Thus, there is a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Even meeting this standard does not guarantee a fee award, since special masters are still empowered by the Act *to limit or deny fees entirely* to unsuccessful litigants. *James-Cornelius ex rel E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

The Circuit has established a two-prong test for evaluating the propriety of fees in an unsuccessful case. First, there is a subjective inquiry, in which it is assessed whether the petition was brought in good faith, followed by an objective inquiry, when the claim's reasonable basis is evaluated. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 689 (2014)).

"Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). "[T]he 'good faith' requirement … focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.*, No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.*, No. 16-0876V, 2019 WL

1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996). And attorney conduct in prosecuting a claim can be relevant. *Purnell-Reid*, 2020 WL 2203712, at *6.

Assessing reasonable basis, by contrast, involves "an objective test, satisfied through objective evidence." *Cottingham*, 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but [goes] more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As the Federal Circuit recently explained, "a reasonable basis analysis is limited to objective evidence, and . . . subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius ex rel E.J.*, 984 F.3d at 1379. Stated differently, a claim that on its face (without any weighing of the evidence) is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis. *Good Game v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62, 68 (2021).

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirthshafter v. Sec'y of Health & Human Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted, however, that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano*, 116 Fed. Cl. at 288, emphasis added in *Wirthshafter*).

Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345–46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y Health & Hum. Servs.*, 159 Fed Cl. 328, 333 (Fed. Cl. 2022) ("*Cottingham II*"). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham*, 971 F.3d at 1346). Further, the standard of establishing "more than a mere scintilla of evidence" cannot be met where the evidence is so contrary that a feasible claim is impossible. *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021).

Furthermore, determining reasonable basis is not a static inquiry. Reasonable basis which may have existed when a claim was filed can cease to exist as further evidence is presented, revealing the claim's lack of objective support on an ongoing basis. *Perreira*, 33 F.3d at 377. In *Perreira*, the Federal Circuit affirmed a special master's determination that reasonable basis was

4

lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.     Fees Are Permissible for this Matter Despite its Facially Weak Character

In this matter, Petitioner had sufficient objective evidence to support her claim, even with the readily apparent weaknesses that Respondent has identified. A finding of reasonable basis requires a mere scintilla of objective evidence to support a feasible claim—a burden that is much lower than the preponderance of evidence standard required for entitlement. It is also well-established that an expert report addressing causation is not necessary to show that a claim had reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379-80 (Fed. Cir. 2021). Affidavits or sworn statements may themselves stand as objective evidence that can be invoked in support of reasonable basis (as well as in establishing entitlement). *James-Cornelius,* 984 F.3d at 1380-81.

The record in this case establishes that Petitioner received the covered Tdap vaccine on February 5, 2019.  Ex. 2 at 32. Over the next several months, Petitioner complained about a constellation of symptoms that were both self-reported as "long-standing," with some new. For example, on February 6, 2019, Petitioner requested an appointment with a geneticist for "longstanding hypermobility."  Ex. 2 at 63, 245. On April 30, 2019, Petitioner reported that "standing for long makes her feel uncomfortable," and her cardiologist recommended a tilt table test (which would be used to confirm POTS). *Id.* at 248. On May 29, 2019, Petitioner had that test, although the impression was somewhat confusing, finding "no evidence of orthostatic hypotension; no evidence of vasovagal syncope," but also stating "diagnostic criteria for POTS met." *Id.* at 573-74.

Respondent correctly observes that Petitioner was later been evaluated by multiple physicians, including autonomic dysfunction specialists, and that the POTS diagnosis was called into question. Petitioner did, however, submit an expert report to support the diagnosis. *See* Ex. 19 (ECF No. 36). And the special master to whom the case had been previously assigned before its transfer to me gave the Petitioner an opportunity to support her claim with additional evidence, suggesting he saw some possibility, however remote, that the claim might be viable.

Given all of the foregoing, and taking into account the exceedingly low bar applied in evaluating reasonable basis, I am loathe to deny fees completely in this case despite its glaring weaknesses. I also am guided somewhat by a parallel matter I decided involving POTS and the Tdap vaccine. *Stiegler v. Sec'y of Health & Hum. Servs.,* No. 21-1152V, 2026 WL 458723, at *4 (Fed. Cl. Spec. Mstr. Jan. 21 2026). There, I expressed reasoned skepticism (based on my experience resolving claims involving other vaccines and POTS) that a theory of Tdap vaccine causation was unlikely to be successful, and after briefing I dismissed the case in the fall of 2024

– with the Court of Federal Claims affirming my decision in April 2025. *Stiegler v. Sec'y of Health & Hum. Servs.,* No. 21-1152V, 176 Fed. Cl. 786 (2025). The Court's resolution of *Stiegler* occurred, however, while this matter was still pending, and thus there was still a bit (albeit minimal) of uncertainty as to how strong claims involving the Tdap vaccine and POTS were – underscoring my caution in evaluating reasonable basis here. (I would have far less compulsion to deem reasonable basis absent in a subsequently-filed case involving the same vaccine and theory, absent some new, game-changing item of literature).

But as discussed in *Stiegler,* finding a kernel of reasonable basis does not forestall me from reducing the fees awarded in a claim "which was never likely to succeed, and which was ultimately pursued to an unnecessary degree, resulting in a waste of judicial resources." *Stiegler*, 2026 WL 458723, at \*4. Counsel who worked on this claim (the same individuals who worked in *Stiegler*) have "been repeatedly unable to prove certain covered vaccines…can cause POTS," and are unlikely to succeed in the future absent new scientific discoveries. *Id.* I will thus, as explained below, reduce the amount to be awarded herein, in order to take into account the fact that time was not *reasonably* spent on this matter, even if it had some objective basis.

### III.    Calculation of Attorney's Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at \*19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner is requesting the following rates for her attorneys and support staff, based on the years work was performed:

6

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Andrew Downing | $385 | $385 | $445 | $445 | $485 | N/A |
| Courtney Jorgenson | $275 | $275 | $345 | $345 | $375 | $400 |
| John Beaulieu | N/A | N/A | N/A | N/A | N/A | $360 |
| Danielle Avery | $135 | $135 | $155 | $155 | $175 | |
| Alex Malvick | N/A | N/A | N/A | $155 | $175 | $195 |
| Samantha Perez | N/A | N/A | N/A | N/A | $175 | |
| Joel Hazard | N/A | N/A | N/A | N/A | N/A | $195 |
| Missy Sealy | N/A | N/A | N/A | N/A | N/A | $195 |

The attorneys at Petitioner's former counsel's firm, as well as current counsel's firm, have been recognized to practice in forum, thus entitling them commensurate rates established in *McCulloch. See Rossiter v. Sec'y of Health & Hum. Servs.,* No. 20-1888V, 2023 WL 3778899, at *2 (Fed. Cl. Spec. Mstr. June 2, 2023). The rates requested by Petitioner in the interim fees request and the final fee request are consistent with what has been previously awarded and accordingly, counsel's hourly rates will not be adjusted.

The time billed to this matter, however, was somewhat unreasonable, in light of the very evident issues in Petitioner's case relating to her diagnosis and the failure of counsel to consider previous decisions involving Tdap-POTS in the Vaccine Program. While Petitioner did voluntarily dismiss her claim after the special master to whom the claim was assigned raised questions about it, the amount of time spent prior to that and the apparent lack of disregard for the very apparent issues with diagnosis in the medical records that were present at the inception of this facially weak claim, makes it difficult to find that the amount of attorney's fees incurred are reasonable.

It is recognized that special masters have the discretion to make across-the-board fees reductions in appropriate circumstances—not only in the interests of avoiding fees litigation becoming a secondary dispute, but in order to ensure that reasonable time is spent on a matter. *See Humphries v. Sec'y of Health & Hum. Servs.,* No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec. Mstr. Oct. 26, 2021) ("Special masters need not engage in a line-by-line review of fees requests when making reductions, and in fact, are permitted to make fair across-the-board cuts."). Cases unlikely to succeed may have reasonable basis, but that does not mean excessive time spent on such a case is inherently *reasonable. See Steigler,* at * 5.

For these reasons, I am reducing the time billed to her former and current attorneys by **30 percent.** Application of the foregoing reduces the amount of fees to be awarded herein by **$**

**11,527.65**[4] for Petitioner's former counsel; and by **$3,458.25**[5] for petitioner's *current* counsel of record.

### IV.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 67, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioner fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issued. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

### (A) Downing, Allison, & Jorgeson Costs

Petitioner seeks $8,585.66 in outstanding costs, including the filing fee, medical record retrieval costs, and postage costs. Int. Fee App., Ex. A. The bulk of Petitioner's costs is associated with an expert fee of $8,000.00. *Id.* at 20. Petitioner's costs associated with the filing fee, medical record retrieval and postage costs are documented with invoices and corresponding payments, and are reasonable herein.

Petitioner did not submit an itemized invoice for expert Dr. Mitchell Miglis, but did supply a payment receipt. Int. Fee App., Ex. A at 20; *see also* Int. Fee App. at 15-16. In the motion for interim fees, Petitioner states that Dr. Miglis charges $500.00 per hour. Int. Fee App. at 16. Other special masters have determined that $500.00 per hour for Dr. Miglis is reasonable, based on a comparison of his qualifications to other experts, and as such, I find this rate to be reasonable. *See Coons v. Sec'y of Health & Hum. Servs.*, No. 20-1067V, 2022 WL 2294213, at *7-8. It further appears that Dr. Miglis spent 16 hours on this matter. Even though I have reduced fees for experts that are unable to produce a detailed invoice in other cases, I am reluctant to deny compensation to experts for their efforts. *See e.g. J.S. v. Sec'y of Health & Hum. Servs.*, No. 16-1083V, 2025 WL 2463263l, at *6 (Fed. Cl. Spec. Mstr. July 30, 2025) ("Experts who fail to produce invoices detailing their hourly rates and time spent on a matter should not expect to continue to receive a full award."). Given that Dr. Miglis did not spend excessive time on this matter, no reductions will be made to his fee.

---

[4] This amount is calculated as ($38,425.50 x .30) = $11,527.65.

[5] This amount is calculated as ($11,527.50 x .30) = $3,458.25.

Accordingly, Petitioner's former counsel costs will be paid in full.

### (B)    Siri & Glimstad, LLP Costs

Petitioner also seeks $70.30 in costs.  Final Fee App., Ex. 72.  These are all related to PACER costs and reimbursable in the Vaccine Program.  Accordingly, these costs are reasonable herein and no reductions shall be made.


## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a fees award, I **GRANT IN PART** Petitioner's Motion for Fees and Costs. I award a total of $43,623.06, reflecting (a)  $ 35,483.51 in fees and costs, to be paid through an ACH deposit to Petitioner's *former* counsel, Andrew D. Downing's, IOLTA account for prompt disbursement; and (b) $8,139.55 in  fees and costs, to be paid through an ACH deposit to Petitioner's counsel of record, Courtney C. Jorgenson's, IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[6]

**IT IS SO ORDERED**.


/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.